## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2019, 7:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan T. Feavel
Vincennes, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parental Rights of:

K.W. (Minor Child),

And

P.W. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 29, 2019

Court of Appeals Case No.
18A-JT-2282

Appeal from the Daviess Circuit Court

The Honorable Gregory A. Smith, Judge

Trial Court Cause No.
14C01-1801-JT-27

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, P.W. (Father), appeals the termination of his parental rights to his minor child, K.W. (Child).

We affirm.

# ISSUES

Father raises three issues on appeal, which we consolidate and restate as the following two:

> (1) Whether Father was denied his right to due process when the Indiana Department of Child Services (DCS) failed to comply with the statutorily required notice provision when terminating his parental rights; and
> (2) Whether the DCS presented clear and convincing evidence to support the trial court's termination of Father's parental rights.

# FACTS AND PROCEDURAL HISTORY

On May 7, 2008, Father was convicted of child solicitation and required to register as a sex offender. Subsequently, on February 4, 2014, he was found guilty of failing to register as a sex offender, a Class D felony.

Father is the biological father of the Child, born on September 16, 2015. At the time of DCS's involvement, the Child was living with her Mother, A. McF.[1]

---

[1] While the trial court terminated Mother's rights to her Child, she did not appeal the decision. Facts pertaining to Mother will be included if necessary for this appeal.

Father and Mother did not reside together. On January 3, 2016, DCS received a report that the Child was failing to thrive due to Mother's lack of parenting ability. That same day, DCS removed the Child from Mother's care and a verified petition alleging that Child was a Child in Need of Services (CHINS) was filed the following day. On January 5, 2016, the trial court entered its order, finding that detention was necessary to protect the Child.

[6] On March 16, 2016, the trial court entered its order, adjudicating Child to be a CHINS after Father entered a limited admission. On April 26, 2016, the trial court entered its dispositional order, ordering Father to, among other things, complete a psychosexual evaluation and follow all recommendations, attend all scheduled visitations, maintain suitable housing, maintain communication with DCS, enroll in programs recommended by DCS and keep all appointments.

[7] On July 28, 2016, the trial court conducted a review hearing and found that Father had submitted to two drug screens, both with negative results. However, although Father had fulltime employment, Father did not have stable housing and was living with the mother of two of his children in North Vernon. During the permanency hearing on November 3, 2016, the trial court noted that Father had only partially complied with the Child's case plan. Most importantly, Father's psycho-sexual and parenting assessment revealed that Father needed to complete parenting training and "independently demonstrate appropriate parenting skills, gain age appropriate interpersonal skills, and coping skills to manage psychological stressors." (Exh. Vol., p. 28). It was also noted that if Father "experiences any significant psychological stressors, begins to use

substances, or refuses to participate in treatment, risk for sexual violence may be exacerbated and should be re-assessed." (Exh. Vol., p. 28). Father had begun participating in individual therapy, had obtained stable housing with his new wife, and was fulltime employed.

[8] During the case review hearing on February 16, 2017, the trial court found that Father had only partially complied with the case plan. While Father kept his appointments with his providers "on most occasions," was working towards his goals, and had established an appropriate home for the Child to visit, Father failed to remain in consistent contact with DCS and DCS had been unable to monitor any drug use. (Exh. Vol. p. 32). Nevertheless, Father had continued to participate in supervised visitation with the Child. At the conclusion of the hearing, the trial court found that

> [t]he cause of the child's out-of-home placement or supervision has not been alleviated. [Father] needs to continue participating in therapy in order to address the issues in his past and address the sexual abuse history. He needs to develop and maintain stability in many areas of his life, including finances, housing, employment, and transportation.

(Exh. Vol., p. 33).

[9] On December 14, 2017, a new and unrelated CHINS case was opened in Vanderburgh County (Vanderburgh Case) involving Father, Father's new wife, and his stepchildren upon a report of significant bruising on the children's bottoms. When questioned, Father could not recall if he had spanked the children the day before and Father's wife stated that she was unconscious

during the punishment of the children due to an untreated neurological issue. The report revealed that Father had physically disciplined his two stepchildren with "a two by four and [] , as for discipline, would put laundry sacks on their back and make them stand in the plank position." (Transcript p. 10). On March 20, 2018, the trial court in the Vanderburgh Case noted that Father had failed to follow the safeguards which were supposed to have been put in place. In addition, the court determined that "[Father's wife] has now stated that she was present and conscious during the excessive punishment by [Father] on the child, which indicates that she is unwilling or unable to adequately protect the child." (Exh. Vol. p. 99).

[10] On May 18, 2018, the trial court conducted a review hearing in the cause before us and found that Father was only partially compliant with services. Father was no longer financially independent and was only able to catch up on his bills after Mother moved in with him and his wife. Although Father had enhanced his parenting ability by engaging in services, he had yet to demonstrate "an ability to provide a safe and stable environment for the Child." (Exh. Vol., p. 44).

[11] On January 12, 2018, DCS filed its petition for termination of Father's parental rights. On July 30, 2018, the trial court held the termination hearing. During the hearing, Brian Sulinski, the family case manager (FCM Sulinski), testified that "across the board, [Father] would engage in services, but he would fail to show that he could apply those to his life." (Tr. p. 11). Throughout the case, Father had three to four different therapists with whom he did not consistently

meet. When confronted with his lack of attendance, Father responded that he had "already done everything that he has been asked to do, so he [didn't] understand why he would still need to continue doing that." (Tr. p. 12). Father stopped working with his parent aid in January 2018 because he could not stay awake during meetings. Father had five other children for whom he was paying "over half of his income." (Tr. p. 13). Although the parent aid advised him to seek a modification of his child support in order to be in a better financial position to reunify with the Child, Father refused.

[12] Father also had a history of instability with employment and housing and, at the time of the termination hearing, he had neither housing nor employment. He had lost his last employment "due to sexual harassment at the workplace." (Tr. p. 14). Father had not visited with the Child since the middle of June 2018. Because of Father's inconsistency with cancelling visits and services, Father's visits with the Child remained supervised. FCM Sulinski testified that termination was in the Child's best interest. DCS's plan was for adoption of the Child by her foster parents—a plan supported by the Child's Court Appointed Special Advocate (CASA). The Child had a strong bond with the foster family, who had already adopted two of the Child's half siblings. On August 27, 2018, the trial court issued its Order, terminating Father's parental rights.

[13] Father now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Due Process*

Father first contends that his right to due process was violated when DCS failed to comply with the statutorily mandated notice provisions when terminating a parent's rights to his minor Child. Pursuant to Ind. Code § 31-35-2-6.5, DCS is required to send notice of the termination hearing to the parents at least ten days before the date of the hearing. In order to comply with the statute, "one need only meet the requirements of Indiana Trial Rule 5, which governs service of subsequent papers and pleadings in action." *In re C.C.*, 788 N.E.2d 847, 851 (Ind. Ct. App. 2003), *trans. denied*. Indiana Trial Rule 5 authorizes service by U.S. mail and "[s]ervice upon the attorney or party shall be made by delivering or mailing a copy of the papers to him at his last known address." T.R. 5(B).

However, even though Father now on appeal pleads the violation of his due process rights, he failed to raise this issue before the trial court. At the commencement of the termination of parental rights hearing, the trial court noted that Father's attorney was present, while Father himself was absent. Father's attorney explained that:

> I was looking through my file earlier and the last contact that I see that I had with my client, I believe that was in April of this year. [A]nd I know this hearing was originally set for, I believe May 15th, which was continued on my notion because I had a jury trial. I did mail - - I mailed [Father] a copy of the Order resetting the hearing for today. I have had no contact with him since, I believe, April.

(Tr. p. 3). Accordingly, as Father did not raise the issue before the trial court, it is now waived for our review. *See In re K.S.*, 750 N.E.2d 382, 834 n.1 (Ind. Ct. App. 2001) (finding an alleged due process right violation waived for appellate review because the party failed to raise the issue before the trial court).

## II. *Termination of Parental Rights*

### A. *Standard of Review*

[16] Father challenges the termination of his parental rights to the Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, parental rights "are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights." *Id.* If "parents are unable or unwilling to meet their parental responsibilities," termination of parental rights is appropriate. *Id.* We recognize that the termination of a parent-child relationship is "an 'extreme measure' and should only be utilized as a 'last resort when all other reasonable efforts to protect the integrity of the natural relationship between parent and child have failed.'" *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015).

[17] Indiana courts rely on a "deferential standard of review in cases concerning the termination of parental rights" due to the trial court's "unique position to assess

the evidence." *In re A.K.*, 924 N.E.2d 212, 219 (Ind. Ct. App. 2010), *trans. dismissed*. Our court neither reweighs evidence nor assesses the credibility of witnesses. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We consider only the evidence and any reasonable inferences that support the trial court's judgment, and we accord deference to the trial court's "opportunity to judge the credibility of the witnesses firsthand." *Id.*

## B. *Termination of Parental Rights Statute*

[18] In order to terminate a parent's rights to his child, DCS must prove:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> * * * *
> (iii) The child has been removed from the parent and has been under the supervision of a local office . . . for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a [CHINS] . . . ;
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a [CHINS];

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove each of the foregoing elements by clear and convincing evidence. *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014). "[C]lear and convincing evidence requires the existence of a fact to 'be highly probable.'" *Id.* On appeal, Father does not challenge the trial court's finding that the Children have been removed from the home for the requisite period of time or that there is a satisfactory plan for the care and treatment of the Child.

### 1. *Conditions have not been remedied*[2]

Father claims that there is insufficient evidence to support the trial court's determination that the conditions which resulted in the removal of the Child have not been remedied. It is well established that "[a] trial court must judge a parent's fitness as of the time of the termination hearing and take into consideration evidence of changed conditions." *Stone v. Daviess Cnty. Div. of*

---

[2] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive; therefore, DCS is required to prove only one of three listed elements. *See In re A.K.*, 924 N.E.2d at 220-21. In this case, the trial court based its termination decision on DCS's satisfaction of Indiana Code section 31-35-2-4(b)(2)(B)(i) & (ii)—that the conditions that resulted in the Child's removal has not been remedied and the continuation of the parent-child relationship poses a threat to the Child's well-being. Because Father fails to challenge the trial court's conclusion that a continued parent-child relationship would pose a threat to the Child, DCS satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B). Nevertheless, because of the important rights at stake, we will address Father's argument.

*Children & Family Servs.*, 656 N.E.2d 824, 828 (Ind. Ct. App. 1995), *trans. denied*. In judging fitness, a trial court may properly consider, among other things, a parent's substance abuse and lack of adequate housing and employment. *McBride v. Monroe Co. OFC*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The trial court may also consider a parent's failure to respond to services. *Lang v. Starke Co. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. "[H]abitual patterns of conduct must be evaluated to determine whether there is a substantial probability of future neglect or deprivation." *Stone*, 656 N.E.2d at 828. A trial court "need not wait until the children are irreversibly influenced by their deficient lifestyle such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship." *Id*. Furthermore, "[c]lear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *K.T.K.*, 989 N.E.2d at 1230.

[20] In support of his argument that the conditions which resulted in the removal of the Child have been remedied, Father contends that he followed DCS's recommendations and was invested in the process of reunification. Although he admits that he "failed to complete the DCS recommendations set forth in the underlying [d]ispositional [o]rder," he attributes "a portion of this failure" to his "limited financial resources." (Appellant's Br. p. 21).

[21]     While we agree with Father that poverty alone is not a valid basis to terminate his parental rights, he fails to acknowledge the abundant evidence present in the record which establishes that he refused to work with his parent aid to address his financial resources by accessing community resources or by requesting a modification of his existing child support obligations. *See Tipton v. Marion Co. Dep't of Public Welfare,* 629 N.E. 2d 1262, 1268 (Ind. Ct. App. 1994) ("Unless the father's poverty causes him to neglect his child or exposes the child to danger such that removal from his care would be warranted, the fact that the father is of low or inconsistent income of itself does not show unfitness.")

[22]     Upon review of the record, we find that DCS clearly established that Father did not remedy the conditions which resulted in the removal of the Child in the first place. Even though Father initially cooperated with DCS's recommendations and engaged in services, as the case progressed Father's behavior became more ambivalent and exhibited an unwillingness to change his circumstances. Father missed therapy appointments, visitations, failed to change his financial situation, was evicted from his home, and was fired from his employment due to sexual harassment. A mere month prior to the termination hearing, Father was homeless and unemployed. Although he professes to be bonded with his Child, Father never graduated from supervised visitation and was even placed on monitored visits, having to confirm his attendance at the visit the day before by phone call. Most egregiously, Father did not demonstrate any personal growth as a result of his participation in individual therapy, as evidenced by the inappropriate physical discipline of his stepchildren with a "two by four" in an

unrelated cause. (Exh. Vol. p. 85). He did not present a plan for maintaining stability—financially or emotionally—or appropriate housing. FCM Sulinski testified that "across the board, [Father] would engage in services, but he would fail to show that he could apply those to his life." (Tr. p. 11).

[23] Accordingly, Father's habitual patterns of conduct clearly documented a substantial probability of future neglect of the Child, as well as a pattern of inability, unwillingness, and lack of commitment to cooperate with services. Therefore, the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Child's removal from Father's care have not been remedied was not clearly erroneous.

### 2. *Best Interests of the Child*

[24] Father also challenges the trial court's determination that termination of his parental rights is in the best interests of the Child. The parent-child relationship is "one of the most valued relationships in our culture." *Bester*, 839 N.E.2d at 147 (quoting *Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Thus, the purpose of terminating a parent-child relationship is to protect the child, not to punish the parent. *In re C.C.*, 788 N.E.2d 847, 855 (Ind. Ct. App. 2003), *trans. denied*. When considering whether termination would be in a child's best interests, the trial court must "look beyond the factors identified by [DCS] and . . . look to the totality of the evidence." *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. "The trial court need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before

terminating the parent-child relationship." *K.T.K.*, 989 N.E.2d at 1235. Permanency is a central consideration in determining a child's best interests. *Id.* "[T]he right of parents to raise their children should not be terminated solely because there is a better home available for the children." *In re K.S.*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

[25] By the time of the termination hearing, the Child had been removed from Father's care for more than two years. The Child is living with the foster family that has adopted her two half-siblings and she is thriving in their care. CASA testified that the Child is bonded with her foster family, calling them "mom and dad." (Tr. p. 27).

[26] At the termination hearing, Father was unemployed and homeless. He had yet to complete services and demonstrate a personal growth in parenting abilities and mental stability. Father never progressed to unsupervised visits; instead, he regressed to monitored visits, having to call ahead the day before to confirm his attendance at the visit. In fact, Father had not visited with the Child since June 2018. It is well established that "[a] parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports a finding that termination of parental rights is in the best interests of the children." *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). Accordingly, based on the totality of the evidence, we find that there is ample support for the trial court's determination that termination of Father's parental rights is in the Child's best interests.

# CONCLUSION

Based on the foregoing, we conclude that DCS presented clear and convincing evidence to support the trial court's Order terminating Father's parental rights to the Child.

Affirmed.

Kirsch, J. and Robb, J. concur